UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LYNN S. GOSSETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-00088-TWP-DKL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Lynn S. Gossett ("Mr. Gossett"), requests judicial review of the decision of Defendant Michal J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), denying Mr. Gossett's first application for Disability Insurance Benefits ("DIB") and requests the Court to remand his case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

## I. BACKGROUND

### A. Procedural History

Mr. Gossett was 47 years old on March 24, 2007, when he filed his first application for DIB under Title II of the Social Security Act, 42 U.S.C. § 423(d). He alleged a disability onset date of February 21, 2007 due to emotional impairments. (Tr. 15; Complaint, § II, ¶ 3; Answer.) Mr. Gossett's past work had been as a chemist and researcher. Following the denial of Mr. Gossett's claim at the initial and reconsideration levels, he appeared before an Administrative Law Judge ("ALJ") on October 6, 2009 for a hearing pursuant to his first application.

(Complaint, § II, ¶ 4; Answer.) On January 27, 2010, the ALJ denied Mr. Gossett's first application. *Id.* Subsequently, while an appeal of the ALJ's decision was pending before the Appeals Council (Dkt. 9-2, R.10), Mr. Gossett filed a second application for DIB where the Disability Determination Bureau approved such application on July 28, 2010 (Appendix, Ex. A, Box # 15). On December 9, 2010, the Appeals Council denied Mr. Gossett's request for review of the ALJ's January 28, 2010 decision upon his first application (Tr. 1-3), thereby rendering such decision the Agency's final decision for purposes of judicial review. 20 C.F.R. § 404.981. On January 19, 2011, Mr. Gossett filed a complaint with the United States District Court for the Southern District of Indiana alleging that pursuant to sentence six of 42 U.S.C. §405(g), Dr. Neville's Mental Residual Functional Capacity ("RFC") assessment was new, material evidence that warranted a remand of the decision on Mr. Gossett's first application.

**B. Medical Evidence**

On May 16, 2007, April Faidley, Ph.D. ("Dr. Faidley"), Mr. Gossett's psychotherapist since October 2005, diagnosed Mr. Gossett with generalized anxiety disorder, adjustment disorder of depressed mood and obsessive compulsive disorder. (Tr. 226-28.) Dr. Faidley indicated that Mr. Gossett's onset date was February 2007 and that Mr. Gossett exhibited anxiety most days with persistent rumination regarding upcoming events, sleep disturbance, and decreased concentration. (Tr. 226-227.) In addition, Dr. Faidley explained that Mr. Gossett suffered from anxiety over the previous twenty years with no periods of remission or exacerbation, and that Mr. Gossett's ability to sustain work performance while experiencing anxiety had declined. (Tr. 228.) Dr. Faidley further opined that Mr. Gossett's anxiety interfered with his work performance and concentration, although she also explained that he could attend to "a *simple* work routine on a consistent basis." (Tr. 230) (emphasis in original).

Six days following Dr. Faidley's diagnosis, state agency reviewing psychologist Joelle Larsen, Ph.D. ("Dr. Larsen"), completed a Psychiatric Review Technique form ("PRTF") and opined that Mr. Gossett was mildly limited in activities of daily living and social functioning and moderately limited in his concentration, persistence, or pace. (Tr. 233-50). Furthermore, Dr. Larsen completed a Summary Conclusions worksheet where she explained that Mr. Gossett was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; and respond appropriately to changes in the work setting. (Tr. 233-34). Dr. Larsen explained that Mr. Gossett was not significantly limited in the remaining sixteen of twenty mental activities enumerated in the worksheet. (Tr. 233-34.) Finally, Dr. Larsen opined that Mr. Gossett "retained the ability to performs SRTs [simple repetitive tasks]" (Tr. 235), and in October 2007, Dr. J. Gange, Ph.D., affirmed this opinion. (Tr. 267.)

Three days following Dr. Larsen's opinion, Dr. James Tandy, M.D. ("Dr. Tandy"), Mr. Gossett's psychiatrist for twenty years, authored a letter to a case manager for absence management at Mr. Gossett's former employer. The letter explained that a current mental status exam showed Mr. Gossett was "tense, terse, and highly anxious and somewhat dysphoric." (Tr. 256-57.) Furthermore, Dr. Tandy explained that since being off from work, Mr. Gossett worked as a volunteer re-stacking books at his local library, three times per week for two or three hours each time, and that Mr. Gossett read and performed craft work at home. (Tr. 257.) Dr. Tandy opined that Mr. Gossett had difficulty maintaining focus, was frequently tense and restless, was easily distracted, all of which detracted from Mr. Gossett's ability to work a full-time job. (Tr. 257.) Dr. Tandy expressed doubt as to whether Mr. Gossett could ever return to full-functioning in a traditional workplace. (Tr. 257.)

Two months following Dr. Tandy's letter, Dr. Tandy authored a second letter explaining that Mr. Gossett suffered from "obsessive worries and ruminative thoughts which impaired [Gossett]" and that because of such thoughts, Mr. Gossett was not able to perform full or part-time employment. (Tr. 252.) Dr. Tandy explained that he had encouraged Mr. Gossett to pursue benefits and that Mr. Gossett was unable to deal with chaos, high degrees of noise, sudden changes in work task, or multiple tasks. (Tr. 252-53.) Dr. Tandy further opined that Mr. Gossett's job would emotionally overwhelm him and cause a decomposition in Mr. Gossett's "marginal" functional state. (Tr. 253.) Thus, Dr. Tandy concluded that he did not see Mr. Gossett returning to work in the future. (Tr. 253.)

On April 7, 2010, three months following the ALJ's January 2010 decision on Mr. Gossett's first application, Mr. Gossett's former counsel submitted to the Appeals Council an additional opinion from Dr. Tandy dated October 2009. (Tr. 334-38.) In Dr. Tandy's October 2009 opinion, Dr. Tandy completed a Mental RFC Assessment form wherein he explained that Mr. Gossett was unable to perform all but two of twenty enumerated mental activities—the ability to understand and remember very short and simple instructions, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 334-35.) Furthermore, Dr. Tandy explained in a letter accompanying the October 2009 opinion that Mr. Gossett was unable to perform a full or part-time job due to his limitations. (Tr. 337-38.)

On April 16, 2010, Mr. Gossett's former counsel submitted to the Appeals Council a letter authored by Dr. Tandy on March 29, 2010, two months following the ALJ's decision. (Tr. 340-43.) In the March 29, 2010 letter, Dr. Tandy explained that Mr. Gossett was able to perform household chores, care for his personal needs, drive, volunteer at his local library, workout, take singing and guitar lesions, and perform in an orchestra; however, Dr. Tandy opined that none of

4

the preceding activities demonstrated functional capacity in the workplace. (Tr. 343.) Additionally, Dr. Tandy opined that Mr. Gossett's anxiety and OCD ruminations precipitated great difficulty in maintaining concentration and social functioning and that such ruminations caused Mr. Gossett to preoccupy himself with others' opinion of him and resulted in a decline in work performance. (Tr. 343.) Again, Dr. Tandy opined that he did not foresee Mr. Gossett returning to full or part-time work. (Tr. 343.)

On July, 28, 2010, Disability Determination Bureau psychologist Kenneth Neville, Ph.D. completed a Mental RFC Assessment wherein he concluded that Mr. Gossett was markedly limited in five areas, moderately limited in seven areas, and not significantly limited in eight areas. Specifically, Dr. Neville opined that Mr. Gossett was markedly limited in the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting (Dkt. 16-1 at 3-4). Dr. Neville further opined that Mr. Gossett was moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to travel in unfamiliar places or use public transportation; and the ability set realistic goals or make plans independently of others (Dkt. 16-1 at 3-4). Finally, Dr. Neville opined that Mr. Gossett was not significantly limited in the ability to remember locations and

work-like procedures; the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to sustain an ordinary routine without special supervision; the ability to ask simple questions or request assistance; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and the ability to be aware of normal hazards and take appropriate precautions (Dkt. 16-1 at 3-4).

In the aggregate, Dr. Neville opined that Mr. Gossett's allegations regarding his limitations were credible, that Mr. Gossett's attention and concentration were markedly limited, and that Mr. Gossett's anxiety would impair superficial work type social interaction. (Dkt. 16-1 at 5.) Furthermore, Dr. Neville explained that Dr. Tandy's medical opinion was "consistent with other information in file and is given controlling weight" due to the detailed nature of such opinion and the length of the physician-patient relationship between Dr. Tandy and Mr. Gossett. (Dkt. 16-1 at 5.) On July 28, 2010, the Social Security Administration ("SSA") found Mr. Gossett to be disabled as of January 28, 2010, and subsequently approved Mr. Gossett's second application. Said approval was premised upon Dr. Neville's July 28, 2010 assessment. (Dkt. 16-1 at Box 15; Tr. 23.)

## II. SENTENCE SIX REMAND

In this case, Mr. Gossett contends that Dr. Neville's Mental RFC Assessment, dated July 28, 2010, constitutes "new" and "material" evidence, to warrant a remand to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g). To merit a remand pursuant to sentence six of 42 U.S.C. § 405(g), the claimant must demonstrate to the court that "there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a

6

prior proceeding." 42 U.S.C. § 405(g); *see also Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005). Specifically, the Seventh Circuit has explained that evidence is "new" if such evidence was "not in existence or available to the claimant at the time of the administrative proceeding."[1] *Schmidt*, 396 F.3d at 742 (quoting *Perkins*, 107 F.3d at 1296). Furthermore, the Seventh Circuit has explained that "[n]ew evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742; *see also Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999). Therefore, "the evidence 'must relate to the claimant's condition during the relevant time period encompassed by the disability application under review.'" *Johnson*, 191. F.3d at 776 (quoting *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)).

### III. DISCUSSION

**A.** **Analysis**

    **1.** **Does the Mental RFC Assessment performed by Dr. Kenneth Neville on July 28, 2010 qualify as "material evidence" for purposes of 42 U.S.C. § 405(g)?**

Mr. Gossett argues that Dr. Neville's Mental RFC Assessment on July 28, 2010 does qualify as "material evidence' pursuant to 42 U.S.C. § 405(g). Specifically, Mr. Gossett's

---

[1] In this case, the parties do not contest the fact that Dr. Neville's Mental RFC assessment qualifies as "new" pursuant to 42 U.S.C. § 405(g). (Dkt. 15 at 3; Dkt. 21 at 8.) Because Dr. Neville's assessment was conducted on July 28, 2010 (Dkt. 16-1 at 5), and because the ALJ rendered her decision upon Mr. Gossett's first application on January 27, 2010, (Tr. 15, 23), the Court concludes that Dr. Neville's assessment was "not in existence or available" to Mr. Gossett at the time the ALJ reviewed his first application. *Schmidt*, 396 F.3d at 742. However, this is not dispositive to the issue as to whether such evidence constitutes "new" evidence for purposes of 42 U.S.C. § 405(g). In *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997), the Seventh Circuit concluded that although the evaluations of a physician were not in existence at the time of the ALJ's decision on Perkins' first application, such evaluations were based on evidence that had "long been available" and was available to Perkins at the time of the first hearing. *Id.* Thus, the court concluded that the evidence in *Perkins* was not "new" for purposes of 42 U.S.C. § 405(g). *Id.* Here, the basis of Dr. Neville's Mental RFC assessment as it relates to evidence that was before the ALJ during the first hearing remains unclear. As such, the Court is unable to determine whether Dr. Neville's assessment was premised upon evidence that would have been available to Mr. Gossett at the time of the hearing before the ALJ with respect to his first application. Based on the record, this Court has serious doubts as to whether Dr. Neville's assessment would qualify as "new" pursuant to 42 U.S.C. § 405(g). However, the Court will not analyze Mr. Gossett's claim that the assessment met the "new" requirement in detail because Mr. Gossett has failed to establish that the Dr. Neville's assessment qualifies as "material" pursuant to 42 U.S.C. § 405(g).

argument is contingent upon the following four premises. First, Mr. Gossett asserts that Dr. Neville's assessment is material because he is recognized by the SSA as a "highly qualified" psychologist who is considered an expert in Social Security disability evaluation. (Dkt. 15 at 3.) Second, Mr. Gossett contends that Dr. Neville's assessment is material because he is impartial. *Id.* Third, Mr. Gossett argues that Dr. Neville's assessment is material because Dr. Neville's opinion of Mr. Gossett's abilities and limitations are more restrictive than the findings of the ALJ with respect to such abilities and limitations. *Id.* Finally, Mr. Gossett asserts that because Dr. Neville was a State agency psychological consultant, the Commissioner is bound by his own ruling, pursuant to Social Security Ruling 96-6p, to the extent that the opinions of State agency physicians and psychologists may be given weight only to the extent that such opinions are supported by evidence in the record. (Dkt. 24 at 2l.) Mr. Gossett reasons that this is so because the Commissioner approved Mr. Gossett's second application on the basis of Dr. Neville's assessment, which suggests that Dr. Neville's assessment was supported by evidence within the record. *Id.* at 2-3.

Despite Mr. Gossett's conclusory analysis regarding the "materiality" of Dr. Neville's assessment, Mr. Gossett's reliance upon the preceding theories is unequivocally misplaced, and patently eschews the requisite standard for "materiality" under 42 U.S.C. § 405(g). As discussed above, the Seventh Circuit in *Schmidt* articulated that "[n]ew evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742. In addition, the court stated that such evidence must relate to the claimant's condition during the time period encompassed by the disability application under review. *See Johnson*, 191 F.3d at 776. Finally, "medical records 'postdating the hearing' and that 'speak only to [the applicant's] current condition, not to his condition at the

time his application was under consideration by the Social Security Administration' do not meet the standard for new and material evidence." *Schmidt*, 395 F.3d at 742 (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

In this case, on January 27, 2010, the ALJ made the initial determination that Mr. Gossett was not disabled from his alleged onset date through the date of the ALJ's decision. (Tr. 15, 23.) Following the ALJ's decision, on July 28, 2010, Dr. Neville completed the Mental RFC assessment for Mr. Gossett where Dr. Neville opined that Mr. Gossett's anxiety and poor frustration tolerance would significantly impair his ability to work and to tolerate work-related changes. (Dkt. 16-1 at 5.) Additionally, Dr. Neville, determined that due to Mr. Gossett's limitations described in the assessment, he would be unable to carry out even unskilled tasks in a competitive setting. *Id.* Furthermore, Dr. Neville, explained that "[m]edical opinion from [claimant's] treating source," referring to Dr. Tandy, "is given controlling weight." *Id.* However, despite the conclusions of Dr. Neville, such conclusions facially do not meet the standard for "material evidence" as explained above.

Specifically, Dr. Neville's assessment of Mr. Gossett was completed on July 28, 2010, a full six months after the ALJ issued her decision upon Mr. Gossett's first application. *Id.* Furthermore, Dr. Neville's assessment speaks in the present tense with respect to Mr. Gossett's limitations, as determined by Dr. Neville for purposes of Mr. Gossett's second application, and does not speak to Mr. Gossett's condition at the time his first application was under review. *Id.* In addition, there is nothing in the record to indicate that Dr. Neville's assessment was intended to address Mr. Gossett's limitations and abilities at the time his first application was under review. Therefore, because Dr. Neville's assessment was conducted a full six months following the ALJ's determination upon Mr. Gossett's first application, and because the record fails to

indicate that Dr. Neville's assessment does not only address Mr. Gossett's limitations and abilities for purposes of his second application, there is no basis on which to construct a "reasonable probability" that the ALJ would have reached a different conclusion had the assessment been considered.

Additionally, as explained by the Commissioner, although Dr. Neville explained that he gave "controlling weight" to Dr. Tandy's "medical opinion," Dr. Neville was not specific as to which of Dr. Tandy's medical opinions he was relying upon to buttress his own conclusions. (Dkt. 16-1 at 5.) Although the record does indicate that the ALJ did have before her specific opinions authored by Dr. Tandy (Tr. 21), the record in its entirety does not indicate which of Dr. Tandy's opinions Dr. Neville utilized in completing the July 28, 2010 assessment. Thus, because of Dr. Neville's failure to specify which of Dr. Tandy's opinions he relied upon to buttress his assessment of Mr. Gossett, and because the record provides no insight into this matter, the Court would be left to speculate as to the basis for Dr. Neville's assessment in determining whether such assessment was premised upon evidence that was before the ALJ at the time she reviewed Mr. Gossett's first application. The Court declines to do so. Accordingly, the Court finds that Dr. Neville's opinion speaks only to Mr. Gossett's limitations and abilities at the time of his second application.

Because Dr. Neville's analysis is so circumscribed, it cannot logically have effected a "reasonable probability" of a different result in the ALJ's decision on Mr. Gossett's first application. In addition, the conspicuous absence of any analysis of or allusion to the established standard for "materiality" in Mr. Gossett's initial brief and in his reply serve not only to further illustrate the lack of such evidence in the record, but further supports the Court's finding. Therefore, the Court concludes that Dr. Neville's Mental RFC assessment, dated July 28, 2010,

fails to meet the long-established standard for "material" evidence to warrant a sentence six remand pursuant to 42 U.S.C. § 405(g).

> **2.  Does Mr. Gossett have "good cause" for failing to submit Dr. Neville's Mental RFC assessment to the ALJ in support of his motion on his first application for DIB benefits?**

Unlike the explicit standard propounded by the Seventh Circuit for the "materiality" of new evidence pursuant to 42 U.S.C. § 405(g), the court has not delineated such an explicit standard under which to measure a claimant's "good cause" pursuant to 42 U.S.C. § 405(g). Instead, the Seventh Circuit has adopted an approach that evaluates a multitude of factors surrounding the claimant's failure to submit such evidence to the ALJ. *See Schmidt*, 395 F.3d at 743 (concluding a claimant that failed to submit readily available evidence to the ALJ and subsequently failed to submit such evidence to the Appeals Counsel after requesting an extension to do so may not avail himself of the procedural opportunity for remand pursuant to 42 U.S.C. § 405(g)); *Perkins*, 107 F.3d at 1296 (concluding that a claimant could not avail himself of the opportunity for remand pursuant to 42 U.S.C. § 405(g) where the claimant's "new" evidence was entirely based on evidence that was "available" to the ALJ and where such claimant had the opportunity to include the "new" evidence into the earlier record); *Sears v. Bowen*, 840 F.2d 394 (7th Cir. 1988) (concluding that the claimant was entitled to remand pursuant to 42 U.S.C. § 405(g) where the "new" evidence proffered by the claimant did not exist during the administrative proceedings and where the evidence was not obtained solely for the purpose of establishing a disability).

In this case, Mr. Gossett contends that he did have "good cause" for failing to submit to the ALJ the Mental RFC assessment performed by Dr. Neville. (Dkt. 16 at 5.) Specifically, Mr. Gossett first contends that this is because Dr. Neville's July 28, 2010 assessment did not exist

11

when the ALJ issued her January 27, 2010 decision upon Mr. Gossett's first application for DIB benefits. *Id.* Although this is affirmed by the record, and implicitly stipulated to by the Commissioner, (Dkt. 21 at 9), this does not end the inquiry. The Commissioner contends that on July 22, 2010, the Appeals Council gave Mr. Gossett's former counsel thirty days to send in additional evidence for consideration by the Appeals Council, and that there is no indication in the record that Dr. Neville's opinion, dated July 28, 2010, was submitted to the Appeals Council in response to such a notice. (Dkt. 21 at 10.) Mr. Gossett responds that the SSA already possessed such information because the SSA's Program Operations Manual System, Section DI: 12045.027(D)(2)(b) mandates that the SSA's Office of Appellate Operations should have received the entire claim file from the second application following their notice that the second application had been approved. (Dkt. 24 at 5.) Furthermore, Mr. Gossett contends that the SSA's Hearings, Appeals, and Litigation Law Manual, Sections I-5-3-17(I)(B) and I-5-3-17(III)(B)(2), mandates that the Appeals Council consider evidence from the second claim to determine whether there was new and material evidence in the first claim, and that the allowance of Mr. Gossett's second claim suggests that the SSA possessed such new and material evidence relating to Mr. Gossett's first application. (Dkt. 24 at 5-6.)

Despite the contentions of both parties, neither party points to any legal authority to buttress their respective arguments. Specifically, the Commissioner has failed to cite any authority, nor is the Court aware of any authority, holding that on its own, a claimant's failure to submit the alleged "new" and "material" evidence to the SSA's Appeals Council, would render the claimant unable to demonstrate "good cause" pursuant to 42 U.S.C. § 405(g). In addition, Mr. Gossett neither rebuts the Commissioner's contention that Mr. Gossett failed to provide the Appeals Council with Dr. Neville's assessment, nor does Mr. Gossett cite to any authority to

12

demonstrate the excusal of his failure to provide such evidence. Thus, Mr. Gossett's citations to the SSA's Program Operations Manual and the SSA's Hearings, Appeals, and Litigation Law Manual merely demonstrate that the Appeals Council may have already had possession of Dr. Neville's assessment, and for Mr. Gossett to provide the Appeals Council with such evidence would be duplicative, although nothing in the record suggests that this was the case. However, in spite of the failure of both the Commissioner and Mr. Gossett to cite to any legal authority to buttress their contentions that Mr. Gossett's failure to provide the Appeals Council with Dr. Neville's assessment did or did not demonstrate the lack or presence of "good cause," the lack of any such evidence to demonstrate that Mr. Gossett did so does not automatically establish a lack of "good cause."

Although Mr. Gossett does not rebut the Commissioner's argument that he failed to provide the Appeals Council with Dr. Neville's opinion, as discussed above, Mr. Gossett explains that his failure to do so was premised upon a reticence to duplicate evidence which the Appeals Council allegedly should have possessed. In a recent Southern District of Indiana case, the court concluded, "[t]he good cause requirement is indicative of congressional intent to prevent bad faith manipulation of the administrative process." *Duncan v. Astrue*, 1:09-cv-0183-SEB-TAB, 2010 U.S. Dist. LEXIS 23408, at *12 (S.D. Ind. 2010), *citing Bush v. Astrue*, 571 F.Supp. 2d 866, 876 (N.D. Ill. 2008). Here, Mr. Gossett's reasoning does not appear to demonstrate bad faith on his behalf during the administrative process, but as explained above, merely a reticence to duplicate evidence that the Appeals Council may have possessed. In *Schmidt* and *Perkins*, the Seventh Circuit determined that the prior availability of the evidence to the claimant, in conjunction with the fact that the claimant unjustifiably failed to submit the evidence at issue into the record at an earlier time, established a lack of "good cause" on behalf

of the respective claimants. Unlike in *Schmidt* and *Perkins*, the record reflects that Dr. Neville's assessment was not "readily available" to Mr. Gossett until after the ALJ rendered her decision upon Mr. Gossett's first application. Thus, Mr. Gossett's failure to submit Dr. Neville's assessment to the Appeals Council does not constitute bad faith or manipulative behavior, but merely an imprudent exercise of judgment. In this case, the lack of bad faith on behalf of Mr. Gossett in failing to submit Dr. Neville's assessment to the Appeals Council, and the unavailability of Dr. Neville's assessment to Mr. Gossett at the time the ALJ rendered her decision upon Mr. Gossett's first application differentiate the circumstances in this case from those present in *Schmidt* and *Perkins*.

In addition, unlike in *Perkins*, Dr. Neville's assessment was conducted at the behest of the SSA and not at the behest of Mr. Gossett. (Dkt. 16-1 at 1-6.) Moreover, the court in *Perkins* determined that the evidentiary basis for Dr. Reich's evaluations had "long been available," *Perkins*, 107 F.3d at 1296, thereby leading the court to determine that Dr. Reich's evaluations were written, in part, for the explicit purpose to critique the decision of the ALJ. *Id.* However, as previously discussed, the basis for Dr. Neville's assessment is unclear; leaving the Court unable to determine whether the basis of Dr. Neville's assessment was in existence at the time the ALJ rendered her decision on Mr. Gossett's first application. Therefore, based upon the foregoing distinctions, and as explained by Mr. Gossett (Dkt. 24 at 4-5), this is highly suggestive that the purpose of Dr. Neville's assessment was not to critique the determination of the ALJ and to establish the existence of a disability, but rather to perform an assessment of Mr. Gossett, on behalf of the SSA, as an impartial expert.

Finally, the Commissioner contends that "*to the extent* that [Gossett] cites Dr. Neville's opinion that his condition has deteriorated since the ALJ's decision" (emphasis added) such a

14

contention is only appropriate for Mr. Gossett's second application and not for a sentence six remand. (Dkt. 21 at 9.) The Commissioner's contention is consistent with recent precedent within the Seventh Circuit. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) (explaining that if the claimant had developed additional impairments or if the claimant's condition worsened since his first application for benefits, the claimant may submit a new application). However, such a contention, although correct, does not speak to whether Mr. Gossett had "good cause" for failing to submit Dr. Neville's assessment to the ALJ during the review of his first application for benefits. Thus, the Commissioner's application of such authority is misplaced and does nothing to support his argument that Mr. Gossett lacked "good cause" for his failure to submit Dr. Neville's assessment. Therefore, the Court finds that Mr. Gossett did have "good cause" for his failure to submit Dr. Neville's assessment in support of his first application for benefits.

## IV. CONCLUSION

In sum, although Mr. Gossett did possess "good cause" for his failure to submit Dr. Neville's Mental Residual Functional Capacity Assessment to the ALJ upon her review of Mr. Gossett's first application, this Court concludes that such assessment does not qualify as "material" pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the decision of the Commissioner of the Social Security Administration is **AFFIRMED.**

SO ORDERED. 03/23/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

15

DISTRIBUTION:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Timothy J. Vrana
tim@timvrana.com